IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-01578-LTB-CBS

MATTHEW ALAN SMITH,
        Plaintiff,
v.

UNITED PARCEL SERVICE,
        Defendant.

_____

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

Magistrate Judge Craig B. Shaffer

        This civil action comes before the court on: (1) Defendant's Motion for Summary

Judgment and Supporting Brief; and (2) Plaintiff's Motion for Summary Judgment and

Supporting Brief.  Pursuant to the Order of Reference dated June 22, 2012 (Doc. # 7) and the

memoranda dated April 2, 2013 (Doc. # 104) and April 22, 2013 (Doc. # 109), these matters

were referred to the Magistrate Judge.  The court has reviewed the Motions, Mr. Smith's

Response (filed April 17, 2013) (Doc. # 107), Defendant United Parcel Service's ("UPS") Reply

(filed May 13, 2013) (Doc. # 117), UPS's Response (filed May 13, 2013) (Doc. # 118), Mr.

Smith's Reply (filed May 31, 2013) (Doc. # 120), the affidavits and exhibits, all of the

proceedings held in the case (*see* Courtroom Minutes/Minute Orders (Docs. # 40, # 45, # 69, #

74, # 99, # 119, # 153)), the entire case file, and the applicable law and is sufficiently advised in

the premises.


I.      Statement of the Case

        Mr. Smith is a former UPS employee.  Proceeding in his *pro se* capacity, he sues UPS for

discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 200e-2 *et seq.* ("Title

VII") based upon a low assessment score he received in 2011 that precluded him from a pool of potential applicants eligible for promotion.  (*See* Complaint (Doc. # 1) at 1-2, 6-7, 28, 32 of 50). Both Mr. Smith and UPS move for summary judgment on the Complaint.

II.     Standard of Review

"The filing of cross motions does not mean that the material facts are undisputed even if the parties focus on the same claim or defense."  *In re Ribozyme Pharmaceuticals, Inc. Securities Litigation*, 209 F. Supp. 2d 1106, 1112 (D. Colo. 2002).  "Because the determination of whether there is a genuine dispute as to a material factual issue turns upon who has the burden of proof, the standard of proof and whether adequate evidence has been submitted to support a prima facie case or to establish a genuine dispute as to material fact, cross motions must be evaluated independently."  *Id.* (citing *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1147 (10th Cir. 2000) (quoting *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979) ("Cross-motions for summary judgment are to be treated separately; the denial of one does not require the grant of another.")).

> The purpose of a summary judgment motion is to assess whether trial is necessary. Rule 56(c) provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The non-moving party has the burden of showing that issues of undetermined material fact exist. A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, that it believes demonstrate the absence of genuine issues for trial. Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in the complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. These facts may be shown by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves.
>
> Summary judgment is also appropriate when the court concludes that no reasonable juror could find for the non-moving party based on the evidence presented in the motion and response.  The operative inquiry is whether, based on

all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict.  Summary judgment should not enter if, viewing the evidence in a light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party. Unsupported allegations without any significant probative evidence tending to support the complaint are insufficient, as are conclusory assertions that factual disputes exist. Evidence presented must be based on more than mere speculation, conjecture, or surmise to defeat a motion for summary judgment. Nevertheless, summary judgment is inappropriate if disputes remain as to material facts.

*Nutting v. RAM Southwest, Inc.*, 106 F. Supp. 2d 1121 (D. Colo. 2000) (internal quotation marks and citations omitted).

Because Mr. Smith appears *pro se*, the court reviews his "pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys."

*Trackwell v. United States Govt*, 472 F.3d 1242, 1243 (10th Cir. 2007)  (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)).  "The *Haines* rule applies to all proceedings involving a pro se litigant, including . . . summary judgment proceedings."  *Hall v. Bellmon*, 935 F.2d 1106, 1110 n. 3 (10th Cir. 1991) (citations omitted).  However, "the generous construction" that is afforded pro se pleadings has limits, and the court "must avoid becoming the plaintiff's advocate."

*Firstenberg v. City of Santa Fe, N.M.*, 696 F.3d 1018, 1024 (10th Cir. 2012) (citation omitted). The Tenth Circuit Court of Appeals has described the standard of review for a summary judgment motion in a lawsuit brought by a plaintiff in his pro se capacity:

> For dispositive issues on which the plaintiff will bear the burden of proof at trial, he must go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to [his] case in order to survive summary judgment.  [E]vidence, including testimony, must be based on more than mere speculation, conjecture, or surmise. Unsubstantiated allegations carry no probative weight in summary judgment proceedings.  Because [Plaintiff] is representing himself, we liberally construe his pleadings; however, we do not act as his advocate.

*Cardoso v. Calbone*, 490 F.3d 1194, 1197 (10th Cir. 2007) (internal quotation marks and citations omitted).  While the court must "accept the facts as the plaintiff alleges them, . . . a

3

plaintiff's version of the facts must find support in the record." *Thomson v. Salt Lake County*, 584 F.3d 1304, 1312 (10th Cir. 2009).

III.   Summary of Undisputed Facts

UPS is the world's largest package distribution company.  (*See* Affidavit of Glenn Mickelson, Exhibit A to UPS's Motion (Doc. # 103-1) at ¶ 3).  Mr. Smith began his employment with UPS in April 2006 as an Air Ramp Manual Operator at the Denver airport.  (*See* Deposition of Matthew Smith, Exhibit B to UPS's Motion (Doc. # 103-2) at 12 of 24).  From 2006 through 2011, Mr. Smith received approximately 45 training sessions, covering international shipments, document key entry, diplomatic pouches, and special services and products for the international area, among other topics.  (*See id.* at 13-14 of 24;  Exhibit C to UPS's Motion (Doc. # 103-3)).

To be considered for a promotion at UPS, employees must successfully follow a series of required steps in UPS's Management Assessment and Promotion Process (MAPP). (*See* Doc. # 103-1 at ¶ 6; Exhibit C to Mr. Smith's Response (Doc. # 107)).  First, the employee must submit a letter of intent.  (*See id.*). Next, the employee's current supervisor must complete an Initial Assessment regarding his or her performance in different competency areas and the candidate must receive a minimum of 3.5 to pass.  (*See id.*).  If the candidate successfully passes the Initial Assessment, he or she must then successfully pass three more steps (including an online assessment, panel interview, and role play), to be placed in an eligible "pool" of candidates for a promotion.  (*See id.*).  When a vacancy occurs, three candidates from the pool are interviewed for the promotion and the most qualified person is selected.  (*See id.*).

In January 2008 Mr. Smith was promoted to the position of part-time supervisor in the Origin Data Capture ("ODC") part of the international package sorting area.  (*See* Doc. # 103-2 at 12 of 24).  UPS later realized that Mr. Smith had been mistakenly promoted, as he had

received an average ranking of 3.0 in his Initial Assessment while a 3.5 average ranking was required to pass.  (*See* MAPP Scoring Sheet (2008), Exhibit K to UPS's Motion (Doc. # 103-11); Doc. # 103-2 at 12-13 of 24; Doc. # 103-1 at ¶ 7).  Mr. Smith acknowledges that he did not receive the requisite score for a promotion to a part-time supervisor position.  (*See id.*).

Mr. Smith's performance as a part-time ODC supervisor was generally poor.  (*See* Quality Performance Review ("QPR") for Appraisal Period 01/01/2010-12/31/2012, Exhibit  D to UPS's Motion (Doc. # 103-4)).  In 2010, Mr. Smith worked in the Commerce City ODC. Because international shipping is governed by tariffs, shipping and customs laws, and national security regulations, many of which are promulgated by the Transportation Security Administration ("TSA"), it is important that employees in the area correctly follow procedures. (*See* Doc. # 103-1 at ¶ 5).  During his 2010 QPR, Mr. Smith received a score of .62 or "Significant Development Needed."  (*See id.*).  Mr. Smith concedes that he made numerous mistakes in 2010 and 2011, including failing to follow procedures.  (*See* Doc. # 103-2 at 15-16 of 24).  He also admits that he was counseled by his supervisors in 2010 for working unauthorized overtime. (*See id.* at 15).  On other occasions, he had to be reminded to leave the office area and go out in the operations floor to work with employees and ensure everything was working smoothly.  (*See id.* at 18, 20 of 24).  In July 2010, Ms. Kelly Heffernan warned Mr. Smith regarding his failure to follow procedures concerning origin holds on packages and informed him that further mistakes "WILL NOT be tolerated" and could result in further disciplinary action, including termination.  (*See id.* at 17 of 24;  Exhibit E to UPS's Motion (Doc. # 103-5)).  In November 2010, three employees complained that  Mr. Smith accused them of not working and treat them rudely when they were attempting to audit packages.  (*See* Doc. # 103-2 at 17-18 of 24).  UPS Center Manager Mike DeFalco warned Mr. Smith about regarding his conduct, told him it was his "second strike", and reviewed UPS's Anti-Harassment Policy with him.  (*See id.* at

18, 21 of 24;  Exhibit F to UPS's Motion (Doc. # 103-6)).  Throughout 2010, Ms. Heffernan

verbally counseled Mr. Smith regarding his performance deficiencies, his failure to follow

procedures, his working of unauthorized overtime, his misuse of confidential proprietary

information belonging to UPS, and his failure to actively manage employees in his area.  (*See*

Affidavit of Kelly Heffernan, Exhibit G to UPS's Motion (Doc. # 103-7) at ¶ 3).

        In January 2011, Mr. Smith submitted letters and forms indicating his interest in a

promotion to the position of full-time sales representative or account executive.  (*See*  Exhibit H

to UPS's Motion (Doc. # 103-8); Doc. # 103-1 at ¶ 9).  In the MAPP Initial Assessment, Mr.

Smith's supervisor, Ms. Heffernan, gave him average rankings of 2.73 for the account executive

position and 2.71 for the sales representative position.  (See Exhibit I to UPS's Motion (Doc. #

103-9); Exhibits K and L to Mr. Smith's Response (Doc. # 107)).  These scores were based on

Ms. Heffernan's evaluation of him based on a number of criteria, including oral communication,

dependability, attention to detail, judgment/decision-making, and interpersonal interaction.  (*See*

*id.*; Exhibit J to UPS's Motion (Doc. # 103-10);  Doc. # 103-7 at ¶ 4).  The Initial Assessment

was reviewed and approved by the Area Human Resources Manager, Mr. Mickelson, on April

26, 2011.  (*See* Doc. # 103-1 at ¶ 10;  Doc. # 103-10).  Because Mr. Smith's scores were under

3.5, he was deemed "underqualified" for a potential promotion to either position and did not

progress to the next step of the process.  (*See* Doc. # 103-1 at ¶ 10).

        Mr. Smith left UPS on a leave of absence on September 10, 2011 and never returned to

work.  (*See* Doc. # 103-1 at ¶ 13; Exhibit KK to Doc. # 107).  Mr. Smith currently suffers from

medical conditions that preclude him from working at any job.  (*See* Doc. # 103-2 at 3-5 of 24).

IV.     Analysis

A.     Discrimination Based on Race

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; . . . "  42 U.S.C. § 2000e-2(a)(1).   "Title VII was enacted to ensure equality of employment opportunities and to eliminate those practices and devices that have historically discriminated on the basis of race, sex, color, religion, or national origin."  *Livingston v. Roadway Exp., Inc.*, 802 F.2d 1250, 1251 (10th Cir. 1986) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).


1.     *Prima Facie* Case

The burden-shifting analysis of *McDonnell Douglas Corp. v. Green* applies to Mr. Smith's claim for disparate treatment based on his race, African American.  411 U.S. 792 (1973).  *See Adamson v. Multi Community Diversified Services, Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008) ("the Supreme Court has established a three-step burden-shifting framework for determining whether a plaintiff's circumstantial evidence of race discrimination raises an inference of invidious discriminatory intent sufficient to survive summary judgment").  Under the *McDonnell Douglas* analysis, "the plaintiff bears the initial burden of presenting a prima facie case of discrimination."  *Jackson v. City and County of Denver*, 628 F. Supp. 2d 1275, 1284 (D. Colo. 2008).  "If the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate some legitimate, non-discriminatory reason" for its employment decision.  *Id.*, at 1284-85 (internal quotation marks omitted).  If the defendant employer "presents such a reason, the plaintiff bears the ultimate burden of showing that these proffered reasons are a pretext for

7

unlawful discrimination." Id. at 1285.

To establish a prima facie case of discrimination based on his race, Mr. Smith must demonstrate that: (1) he is a member of a protected class; (2) he was subjected to an adverse employment action; and (3) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *Hysten v. Burlington N. & Santa Fe Ry. Co.*, 296 F.3d 1177, 1181-82 (10th Cir. 2002) (modifying the four-part *McDonnell Douglas* test for claims that do not involve hiring or firing). *See also E.E.O.C. v. PVNF, L..L.C.*, 487 F.3d 790, 800 (10th Cir. 2007) (same) (citing *Plotke v. White,* 405 F.3d 1092, 1099 (10th Cir. 2005) ("[T]he articulation of a plaintiff's prima facie case may well vary, depending on the context of the claim, and the nature of the adverse employment action alleged.")).

Mr. Smith has clarified that the only acts that he contends were discriminatory were the low Initial Assessment scores he received at the first step of the promotion process in Spring 2011.  (*See* Doc. # at 6, 10, 12 of 24).  Mr. Smith is a member of a protected class, African-American.  UPS argues that Mr. Smith cannot show that he was subjected to an adverse employment action.  *See Piercy v. Maketa*, 480 F.3d 1192, 1203 (10th Cir. 2007) (to establish adverse employment action, a plaintiff must show that the defendant's conduct caused a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.") (citation omitted).  Because his scores on the MAPP Initial Assessment were too low to qualify for a potential promotion, Mr. Smith could not complete the promotion process.  (*See* Doc. # 103-1 at ¶ 10).  *See Toth v. Gates Rubber Co.*, No. 99-1017, 216 F.3d 1088, 2000 WL 796068, at * 10 n. 10 (10th Cir. June 21, 2000) (receipt of poor performance evaluations that ultimately resulted in employee's discharge and had adverse impact on future employment opportunities was sufficient to constitute adverse employment action).

8

Even if the court assumes that Mr. Smith suffered an adverse employment action, he must set forth a prima facie case of discrimination because he has not presented sufficient proof of circumstances giving rise to an inference of racial discrimination. "While the elements of a prima facie case under the *McDonnell Douglas* framework are neither rigid nor mechanistic, their purpose is the establishment of an initial inference of unlawful discrimination warranting a presumption of liability in plaintiff's favor." *Adamson*, 514 F.3d at 1146. "Establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981). "As the very name prima facie case suggests, there must be at least a logical connection between each element of the prima facie case and the illegal discrimination for which it establishes a legally mandatory, rebuttable presumption." *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 311-12 (1996) (internal quotation marks and citation omitted). "[T]he prima facie case raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." *Burdine*, 450 U.S. 248, 254 (1981) (internal quotation marks and citation omitted). "In the absence of facts tending to establish this initial inference, plaintiff is not entitled to the presumption of discrimination and a defendant is not required to defend against the charge." *Adamson*, 514 F.3d at 1146.

A plaintiff can raise the required inference of discrimination as part of a prima facie case in a number of ways. *E.E.O.C. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1195 n. 6 (10th Cir. 2000). Evidence that a defendant treated a plaintiff differently than similarly-situated employees is sufficient to establish a prima facie case. *Id.* "Similarly situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline." *Rivera v. City and County of Denver*, 365 F.3d 912, 922

(10th Cir. 2004) (internal quotation marks and citation omitted).  *See also Kendrick v. Penske Transp. Services, Inc.*, 220 F.3d 1220, 1232 (10th Cir. 2000) (In determining whether an employee is similarly situated to the plaintiff, "[a] court should also compare the relevant employment circumstances, such as work history and company policies, applicable to the plaintiff and the intended comparable employees.") (citation omitted);  *David v. City and County of Denver*, 101 F.3d 1344, 1359-60 (10th Cir. 1996) (discussing circumstances to be compared);  *Furr v. Seagate Technology, Inc.*, 82 F.3d 980, 986 (10th Cir. 1996) (rejecting plaintiff's evidence of differential treatment because other employees were not similarly situated);  *Suitt v. Honeywell Cons. Prod. Grp.*, 562 F. Supp. 2d 1355, 1365 (D. Utah 2008) (granting employer summary judgment; an employee is similarly situated to the plaintiff if the employee deals with the same supervisor and is subject to the same standards for evaluation and discipline) (citation omitted).

Mr. Smith argues that "similarly situated employees who were/are not in the plaintiff's protected group were/are treated more favorably or did not receive the same adverse treatment." (*See* Doc. # 107 at 2 of 11, Doc. # 108 at 2 of 11).  However, the evidence does not show that he was treated differently than any other employee performing at the same level.  Mr. Smith submits a summary of all UPS Commerce City employees who went through the MAPP process in 2010 and 2011.  (*See* Exhibits JJ to Mr. Smith's Response (Doc. # 107) and to Mr. Smith's Motion (Doc. # 108)).  The summary shows that Mr. Smith was the only person Ms. Heffernan evaluated, so the other candidates are not similarly situated to him.  *See Hysten*, 296 F.3d at 1182 ("plaintiff wishing to prove discriminatory animus with evidence that his employer treated him differently from other employees bears the burden of showing that the comparison is legally relevant – *i.e.*, that the employees were similarly situated") (citation omitted).

The summary Mr. Smith submitted also shows that in 2010, four African American, one

Hispanic, and three White employees in Commerce City (five males and three females) passed each step of the MAPP process.  (*See* Exhibits JJ to Mr. Smith's Response (Doc. # 107) and to Mr. Smith's Motion (Doc. # 108)).  In 2011, two African American, one Hispanic, and five White employees (three males and five females) passed each step of the MAPP process.  (*See id.*). This evidence does not demonstrate that non-African American applicants were treated more favorably than Mr. Smith.

Nor does the evidence demonstrate an inference of discrimination in hiring Account Executives or Sales Representatives.  After Mr. Smith went through the Initial Assessment in Spring 2011, there were no Sales Representative positions filled at the Commerce City facility during 2011 or 2012, as the position was eliminated.  (*See* Doc. # 103-1 at  ¶ 11).  After Mr. Smith went through the Initial Assessment process in Spring 2011 and before he took a leave of absence in September 2011, the first Account Executive position available was filled by the external hire of an African-American male in September 2011.  (*See* Doc. # 103-1 at ¶ 12).  The next two available Account Executive positions in February 2012 were filled by external hires of an African-American male and a Hispanic male.  (*See id.*).  *See Paige v. Donovan*, No. 09-cv-01811-WJM-CBS, 2011 WL 5520298, at * (D. Colo. Nov. 14, 2011) ("To show an inference of discrimination in a failure to promote context, a plaintiff must show that . . . the position . . . was ultimately filled by someone outside of the protected class.").

A plaintiff may also establish a *prima facie* case with evidence of discriminatory statements from which the determining cause of an employment decision might be inferred.  Mr. Smith argues that he has admissible evidence of "[s]uspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn."  (*See* Doc. # 107 at 2 of 11 (citing Exhibit GG)).  Mr. Smith presents three statements

by Ms. Heffernan that he contends were discriminatory: a comment on an unspecified date that hip-hop music is inappropriate and culturally demeaning, a nonspecific comment about a Hispanic male, and a comment that Ms. Heffernan did not need a man to fix a desk.  (*See* Doc. # 103-2 at 6-9 of 24).  The comments about hip-hop music and the desk were made sometime between 2010 and September 2011.  (*See* Doc. # 103-2 at 8-9 of 24).  The lack of temporal proximity between the remarks and the ensuing employment action undermine the reasonableness of an inference that a causal relationship existed between the remarks and the decision made.  *Acevedo Martinez v. Coatings Inc. and Co.*, 251 F. Supp.2d 1058, 1067 (D.P.R. 2003).  Mr. Smith's evidence does not establish any relationship between the comments by Ms. Heffernan and his scores on the Initial Assessment.  These comments raise no inference of discrimination against Mr. Smith.  *See Cone v. Longmont United Hosp. Ass'n.*, 14 F.3d 526, 531 (10th Cir. 1994) ("isolated comments unrelated to the challenged action are insufficient to show discriminatory animus in termination decisions");  *Wagoner v. Pfizer, Inc.*, No. 09-3066, 391 F. App'x 701, 708 (10th Cir. 2010) ("[E]ven at the summary judgment stage, stray remarks and isolated or ambiguous comments are too abstract . . . to support a finding of . . . discrimination.");  *Taylor v. Hewlett Packard Co.*, 2007 WL 2908415, *4 (D. Colo. Oct. 3, 2007) ("[a]bstract comments and amorphous attitudes are an insufficient basis upon which to create a jury issue in an [employment discrimination] case.").  "[S]tray remarks in the workplace . . . cannot justify requiring the employer to prove that its hiring or promotion decision were based on legitimate criteria.  Nor can . . . statements by decisionmakers unrelated to the decisional process itself, suffice to satisfy the plaintiff's burden in this regard."  *Price Waterhouse v. Hopkins*, 490 U.S. 228, 277-78 (1989) (O'Connor, J., concurring), *superseded by statute*, Civil Rights Act of 1991, 105 Stat. 1071, *as recognized in University of Texas Southwestern Medical Center v. Nassar*, 133 S.Ct. 2517, 2526 (2013) (abrogating a portion of *Price Waterhouse's*

12

framework by removing the employer's ability to defeat liability once a plaintiff proved the existence of an impermissible motivating factor).  Mr. Smith fails to produce sufficient proof of circumstances giving rise to an inference of unlawful discrimination to satisfy the third part of his prima facie case.

2.      Legitimate, Nondiscriminatory Reason

Even if the court assumes that Mr. Smith presented a *prima facie* case of discrimination based on his race, the burden shifts to UPS to rebut the presumption of discrimination by producing evidence that Mr. Smith received his scores on the MAPP Initial Assessment for legitimate, nondiscriminatory reasons. *Burdine*, 450 U.S. at 254.  At this stage of the *McDonnell Douglas* analysis, UPS's burden is "exceedingly light;" UPS must merely proffer non-discriminatory reasons, not prove them. *Zamora*, 478 F.3d at 1165-66 (internal quotation marks and citation omitted).  *See also EEOC v. Flasher Co., Inc.*, 986 F.2d 1312, 1317 (10th Cir. 1992) (at this stage, defendant is required only to "explain its actions against the plaintiff in terms that are not facially prohibited by Title VII.").

The evidence shows that Mr. Smith's Initial Assessment was consistent with his work performance and disciplinary history under multiple managers.  Mr. Smith presents several Initial Assessments to show that he applied for and was qualified for promotion.  (*See* Exhibits E, H, I, and J to Doc. # 107).  However, the exhibits show that he failed the Initial Assessment step in 2009, 2010, and 2011 and that multiple supervisors agreed on the fact he was not ready to assume more responsibility.  (*See id.*).  Evaluation of his 2009 and 2010 performance by multiple supervisors and managers indicated that Mr. Smith was underqualified for the promotions he sought.  (*See* Exhibits E, H, I, and J to Doc. # 107).  Mr. Smith's own evidence shows that he applied five times for a full-time supervisor and/or specialist position while

13

working under different supervisors and each time, he did not pass the Initial Assessments.[1]

Mr. Smith had numerous performance issues in 2010 and 2011, including processing mistakes, unauthorized overtime, failure to work on the operations floor with his employees, failure to follow procedures, employee complaints, and misuse of confidential proprietary information.  (*See* Doc. # 103-2 at 15-18 of 24;  Exhibits H, I, and J to Doc. # 107).  In July 2010 Mr. Smith was warned regarding his failure to follow procedures concerning origin holds on packages and informed him that further mistakes "WILL NOT be tolerated" and could result in further disciplinary action, including termination.  (*See id.* at 17 of 24;  Exhibit E to UPS's Motion (Doc. # 103-5)).  Mr. Smith was counseled throughout 2010 regarding his performance deficiencies, his failure to follow procedures, his working of unauthorized overtime, his misuse of confidential proprietary information belonging to UPS, and his failure to actively manage employees in his area.  (*See* Doc. # 103-7 at ¶ 3).  Mr. Smith was disciplined shortly before taking the Initial Assessment.  Two months before he went through the MAPP process, the UPS Center Manager told him he had a "second strike" and that any further performance issues could lead to termination.  (*See* Doc. # 103-2 at 18, 21 of 24;  Doc. # 103-6).  Mr. Smith concedes that it was appropriate for UPS to consider his work performance in 2010, including negative aspects of his performance and the mistakes he made, when evaluating him during the Initial Assessment.  (See Doc. # 103-2 at 20 of 24).  Mr. Smith's history of low Initial Assessment scores and work performance problems is consistent with Ms. Heffernan's conclusion in the Spring 2011 Initial Assessment that he was not qualified to progress to the next step of the promotion process.

UPS articulates legitimate, non-discriminatory reasons for the low Initial Assessment

---

[1]     Mr. Smith does not contend that a low Initial Assessment score that he received from his manager in 2008, Jesse Gallegos, was discriminatory.  Those scores made him underqualified for the promotion that he was mistakenly given.  (*See* Doc. # 103-2 at 13 of 24).

scores Mr. Smith received at the first step of the promotion process in Spring 2011.  UPS has

not relied on a conclusory assertion that Mr. Smith's performance did not warrant higher scores;

rather, the Initial Assessment is supported by detailed examples and explanations of problems

with his work.  Mr. Smith does not contravene many cited deficiencies in his performance.

Because UPS's proffered reasons are not "facially prohibited by Title VII," *Flasher*, 986 F.2d at

1317, UPS has articulated legitimate, nondiscriminatory reasons for Mr. Smith's low Initial

Assessment scores and has satisfied its burden.


3.     Pretext

Mr. Smith can only withstand summary judgment if he presents evidence sufficient to

raise a genuine dispute of material fact regarding whether UPS's articulated reasons are

pretextual.  *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147–49 (2000).

Where a defendant articulates a non-discriminatory reason for the challenged employment

action, the burden reverts back to the plaintiff to show that "there is a genuine dispute of

material fact as to whether the employer's proffered reason for the challenged action is

pretextual – i.e., unworthy of belief." *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir.

1995).  "Pretext exists when an employer does not honestly represent its reasons for terminating

an employee." *Miller v. Eby Realty Group LLC*, 396 F.3d 1105, 1111 (10th Cir. 2005).  "The

relevant inquiry is not whether [the employer's] proffered reasons were wise, fair or correct, but

whether [it] honestly believed those reasons and acted in good faith upon those beliefs." *Rivera*

*v. City and County of Denver*, 365 F.3d 912, 925 (10th Cir. 2004) (internal quotation marks and

citation omitted).

> To support an inference of pretext, to suggest that something more
> nefarious might be at play, a plaintiff must produce evidence that the employer did
> more than get it wrong. He or she must come forward with evidence that the
> employer didn't really believe its proffered reasons for action and thus may have

been pursuing a hidden discriminatory agenda. This is because Title VII licenses us not to act as a "super personnel department" to undo bad employment decisions; instead, it charges us to serve as a vital means for redressing discriminatory ones.

*Johnson v. Weld County, Colorado*, 594 F.3d 1202, 1211 (10th Cir. 2010) (citation omitted).

To show pretext, a plaintiff must produce evidence of "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Jones v. Oklahoma City Public Schools*, 617 F.3d 1273, 1280 (10th Cir. 2010) (internal quotation marks and citation omitted). Evidence of pretext may take a variety of forms. *Swackhammer v. Sprint/United Management Co.*, 493 F.3d 1160, 1167-68 (10th Cir. 2007). "One typical method for a plaintiff to prove pretext is by providing direct evidence that the defendant's stated reason for the adverse employment action was false." *Swackhammer*, 493 F.3d at 1167 (citation omitted). Mr. Smith bears the burden of showing that each reason given by the employer is unworthy of credence. *Jaramillo v. Colo. Judicial Dept.*, 427 F.3d 1303, 1308 (10th Cir. 2005).

"Another common method is a differential treatment argument, in which the plaintiff demonstrates that the employer treated [the plaintiff] differently from other similarly-situated employees who violated work rules of comparable seriousness in order to show that the employer failed to follow typical company practice in its treatment of the plaintiff." *Id.* at 1167-68. *See also Kendrick v. Penske Transp. Serv., Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000) (Typically, a plaintiff may show pretext in one of three ways: "(1) with evidence that defendant's stated reason for the adverse employment action was false; (2) with evidence that the defendant acted contrary to a written company policy prescribing the action taken by the defendant under the circumstances; or (3) with evidence that . . . he was treated differently from other similarly-situated employees who violated work rules of comparable seriousness."). Once

the employer's proffered reason is shown to be pretextual, the factfinder may infer that prohibited discrimination is the real cause for the adverse action.  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 519  (1993).

There is substantial evidence in the record that Mr. Smith's job performance was the reason for his low Initial Assessment score in Spring 2011.  Mr. Smith's evidence of three statements by Ms. Heffernan is not sufficient to establish that UPS's articulated reasons for his Initial Assessment scores are pretextual or unworthy of belief.  Nor does the evidence show that he was treated differently than any similarly situated employee.

Citing numerous exhibits, Mr. Smith argues that he was rated too low on the Initial Assessment because UPS failed to consider his other accomplishments and performance. (*See, e.g.,* Exhibits P-AA, CC, DD, LL, MM, NN, OO, PP-RR to Doc. # 107; Doc. # 103-2 at 6 of 24 ("They ranked me specifically on what they believed I was doing wrong, and they ignored – they completely ignored what I was doing right.")).  He contends his behavior and performance reflected that he was serious about wanting a promotion to full-time supervisor, and lists tasks he believes he completed well.  By this argument, Mr. Smith merely attempts to substitute his judgment for that of his employer.  "The inquiry into pretext centers on the employer's beliefs, not the employee's beliefs."  *Alvarez v. Royal Atlantic Developers, Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010) (citation omitted).  *See also Salguero v. City of Clovis*, 366 F.3d 1168, 1176 (10th Cir. 2004) (In determining whether the proffered reasons for a decision were pretextual, the court must examine "the facts as they appear to the person making the decision . . . .") (internal quotation marks and citations omitted);  *Rojas v. Florida*, 285 F.3d 1339, 1342 (11th Cir. 2002) ("we must be careful not to allow Title VII plaintiffs simply to litigate whether they are, in fact, good employees");  *Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1261 (10th Cir. 2001) (when assessing pretext, courts look to the facts as they appear to the management

17

official);  *Shorette v. Rite Aid of Me., Inc.*, 155 F.3d 8, 15 (1st Cir. 1998) ("It is well settled . . .

that a plaintiff's own opinions about [his] work performance or qualifications do not sufficiently

cast doubt on the legitimacy of [his] employer's proffered reasons for its employment actions.")

(internal quotation marks and citation omitted);  *Furr*, 82 F.3d at 988 ("It is the manager's

perception of the employee's performance that is relevant, not plaintiff's subjective evaluation . .

. .").

Mr. Smith concedes that it is his personal belief that he was the victim of race or gender

discrimination.  (*See* Doc. # 103-2 at 7-8, 11 of 24).  Personal belief raises no factual issue for

trial.  *See Barnes v. Cessna Aircraft Co.*, No. 10-1280-JTM, 2011 WL 6739592, at *15 (D. Kan.

Dec. 22, 2011) ("Because the plaintiff has failed to produce admissible evidence showing that

the evaluation scores were the product of discriminatory animus rather than [his supervisor's]

professional judgment, his claim of discrimination has failed to present an inference of

discrimination.");  *Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1117 (10th Cir. 2007)

(plaintiff's subjective assessment of her own relative qualifications is not probative of pretext);

*Jencks v. Modern Woodmen of America*, 479 F.3d 1261, 1267 (10th Cir. 2007) ("Mere

conjecture that the employer's explanation is pretext is insufficient basis to defeat summary

judgment.") (internal quotation marks and citation omitted);  *McKnight v. Kimberly Clark Corp.*,

149 F.3d 1125, 1130 (10th Cir. 1998) (plaintiff's "mere belief that he was treated unfairly due to

[illegal motives] is wholly insufficient to support a finding of pretext").

The arguments advanced by Mr. Smith are insufficient to produce an issue of fact as to

pretext.  His assertions with regard to his Initial Assessment scores merely invite the trier of fact

to adopt his subjective characterization over UPS's subjective characterization of the quality of

his work.  He provides only opinion or conjecture, not specific grounds or facts, to support a

claim of pretext.  The evidence does not show that Mr. Smith's Initial Assessment scores were a

pretext for discrimination based on his race rather than his job performance, that is, that he received his scores *because* of his race.  As Mr. Smith has not met his burden on summary judgment to show that UPS's stated legitimate reasons for his MAPP Initial Assessment scores were a pretext for discrimination based on his race.  UPS is entitled to summary judgment on his race discrimination claim.

B.     Discrimination Based on Gender

Title VII prohibits discrimination against groups that historically have not been socially disfavored, as well as groups that historically have been socially disfavored.  *Livingston*, 802 F.2d at 1252 (citation omitted).  "However, the presumptions in Title VII analysis that are valid when the plaintiff belongs to a disfavored group are not necessarily justified when the plaintiff is a member of an historically favored group."  *Id.*  Mr. Smith's allegation that he was subjected to disparate treatment because he is male is subject to a reverse discrimination analysis.

In order for a reverse discrimination claim to survive a summary judgment motion, the movant must first establish a prima facie case.  *Notari v. Denver Water Dept.*, 971 F.2d 585, 588 (10th Cir. 1992) (citation omitted).  If the plaintiff carries this initial burden, the burden then shifts to the defendant to show a legitimate nondiscriminatory reason for the challenged employment decision.  *Notari*, 971 F.2d at 588.  If the defendant meets this burden, the burden then shifts back to the plaintiff to prove that the legitimate reasons were really a pretext for discrimination. *Notari*, 971 F.2d at 588.

In a reverse discrimination case, the prima facie case is adjusted to reflect the reverse discrimination context of the lawsuit.  *Reynolds v. School Dist. No. 1, Denver, Colo.*, 69 F.3d 1523, 1534 (10th Cir. 1995).  *See also Livingston*, 802 F.2d at 1252 ("When a plaintiff who is a member of a favored group alleges disparate treatment, the courts have adjusted the prima

facie case to reflect this specific context . . . .").  This adjustment requires the plaintiff to show

either:  background circumstances which demonstrate that the defendant is that unusual

employer who discriminates against the majority or, alternatively, that but for the plaintiff's status

the challenged employment decision would not have occurred.  *See Adamson v. Multi-Cmty.*

*Diversified Servs., Inc.*, 514 F.3d 1136, 1149 (10th Cir. 2008) ("When plaintiff is a member of a

historically favored group, by contrast, an inference of invidious intent is warranted only when

background circumstances support the suspicion that the defendant is that unusual employer

who discriminates against the majority.") (citation omitted);  *Mattioda v. White*, 323 F.3d  1288,

1292 (10th Cir. 2003) ("In modifying the first prima facie requirement, this court recognized that

members of the majority group are not necessarily entitled to a presumption of discrimination

afforded to members of a minority group.");  *McGarry v. Board of County Com'rs of the County*

*of Pitkin*, 175 F.3d 1193, 1199 (10th Cir. 1999) ("The plaintiff may proceed by relying on a

version of the *McDonnell Douglas Corp. v. Green* burden-shifting analysis to test whether a

person who is a member of a historically favored group is entitled to the McDonnell Douglas

presumption of discrimination.").  This alternative approach "does not displace the *McDonnell*

*Douglas* paradigm but simply provides an alternative basis upon which plaintiffs may satisfy

their prima facie burden."  *Notari*, 971 F.2d at 591.  "[I]t is not enough, under this alternative

formulation, for a plaintiff merely to allege that he was qualified and that someone with different

characteristics was the beneficiary of the challenged employment decision.  Instead, the plaintiff

must allege and produce evidence to support a reasonable inference that but for plaintiff's status

the challenged decision would not have occurred."  *Notari*, 971 F.2d at 590.

First, Mr. Smith fails to establish a prima facie case for discrimination based on his

gender because he presents no evidence that UPS is the unusual employer who discriminates

against males.  A plaintiff can show suspicious background circumstances by providing

evidence that the defendant is "inclined to discriminate invidiously against males or something 'fishy' about the facts that raises an inference of discrimination." *Woods v. Perry*, 375 F.3d 671, 674 (8th Cir. 2004), *abrogated on other grounds by Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011).   Mr. Smith does not present evidence that suggests male employees at UPS are disadvantaged in favor of women or that less qualified female applicants are given any preference.   The evidence shows that in 2010, five males and three females passed each step of the MAPP process.   (*See* Exhibits JJ to Mr. Smith's Response (Doc. # 107) and to Mr. Smith's Motion (Doc. # 108)).   In 2011, three males and five females passed each step of the MAPP process.   (*See id.*).   The evidence also shows that after Mr. Smith went through the Initial Assessment in Spring 2011, there were no Sales Representative positions filled at the Commerce City facility during 2011 or 2012, as the position was eliminated, and that the first three Account Executive positions available were filled in September 2011 and February 2012 by two African-American males and a Hispanic male.   (*See* Doc. # 103-1 at ¶¶ 11, 12).   Of twelve people hired or promoted into the Account Executive position from 2010-2012 in Commerce City, four were African American, one was Hispanic, seven were White, ten were male and two were female.   (*See* Exhibit JJ to Doc. # 107).   The evidence fails to demonstrate that UPS engaged in a pattern of gender discrimination that favored women over men in the Initial Assessment pass rate, for Sales Representative positions, or for Account Executive positions.   As Mr. Smith has not presented evidence of background circumstances necessary to demonstrate that UPS is the unusual employer who discriminates against the majority, he is not entitled to a presumption of discrimination.

Mr. Smith still may succeed in establishing his prima facie case of reverse discrimination if his indirect evidence supports a reasonable probability that he would not have been discharged but for his status as a male.  *See Archuleta*, 46 F. Supp. 2d at 1104 ("Under the

alternative method of proof, even if a plaintiff does not allege sufficient background circumstances (in lieu of showing that he is a member of a protected group), he may still avail himself of the *McDonnell-Douglas* presumption if he 'presents direct evidence of discrimination, or indirect evidence sufficient to support a reasonable probability, that but for the plaintiff's status the challenged employment decision would have favored the plaintiff. . . .' ") (citations omitted); *Notari*, 971 F.2d at 590 (although not entitled to the implicit presumption under the *McDonnell Douglas* prima facie case analysis, a plaintiff may still proceed with his or her claim of reverse discrimination by offering evidence that shows it is reasonably likely he would not have been fired or suffered adverse employment actions "but for" the defendant's discrimination).

Mr. Smith does not satisfy the "but for" standard, as the evidence does not establish that the Initial Assessment scores were based on his gender.  Mr. Smith concedes that he committed some of the acts for which he received low scores on his Initial Assessment.  He presents no evidence that similarly situated female employees were treated any differently than him regarding their Initial Assessment scores and job performance.  The evidence shows no more than Mr. Smith's personal belief that he deserved higher scores.  Mr. Smith has not presented sufficient evidence to demonstrate that, but for his status as a male, he would have received higher scores.

In sum, Mr. Smith has not presented sufficient evidence on an element of his prima facie case: that he was treated differently than similarly situated female employees because of his gender.  He has not met his initial burden of proving a prima facie case of reverse discrimination under Title VII because he has not brought forth sufficient evidence that UPS is the unusual employer that discriminates against the majority or that but for his gender he would not have received the challenged Initial Assessment scores.

Even if the court could conclude that Mr. Smith made a prima facie case of reverse discrimination, the court must permit UPS to articulate a nondiscriminatory justification for its employment decision and Mr. Smith must have the chance to show that the articulated justification is pretextual.  *See Notari*, 971 F.2d at 591.  UPS has articulated legitimate, nondiscriminatory reasons for Mr. Smith's low Initial Assessment scores and has satisfied its burden.  Mr. Smith must respond to UPS's legitimate, nondiscriminatory explanations by showing how these explanations are pretextual or how his Initial Assessment scores were based on discriminatory reasons.  *Murray*, 45 F.3d at 1421.  "[T]he plaintiff must show *both* that the reason was false, *and* that discrimination was the real reason . . .  [I]t is not enough . . . to disbelieve the employer, . . ."  *St. Mary's Honor Center*, 509 U.S. at 535 (emphasis in original) (internal quotation marks and citation omitted).

Mr. Smith's evidence of Ms. Heffernan's alleged comments on an unspecified date in 2011 about hip-hop music, on an unspecified date concerning a Hispanic employee, and at some time in 2010 or 2011 that she didn't "need a man to fix an issue like with the desk . . ." is too attenuated in time and content to establish that UPS's explanations are pretextual or that his Initial Assessment scores were based on gender discrimination.  (*See* Doc # 103-2 at 6-9 of 24).  Nor does the evidence show that he was treated differently than any similarly situated employee.  Further, his personal opinions about his work performance or qualifications do not sufficiently cast doubt on the legitimacy of UPS's proffered reasons for its employment actions.  The evidence does not demonstrate "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action [such] that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reason."  *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1217 (10th Cir. 2002) (citation omitted).  UPS is entitled to

summary judgment on Mr. Smith's gender discrimination claim.

C.     Retaliation

In the Complaint, Mr. Smith briefly mentions "Retaliation." (*See* Doc. # 1 at 2 of 50, ¶ 9). Title VII forbids retaliation against an employee because he has "opposed" any practice made unlawful by Title VII, or because he has "participated . . . in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).   Where there is no direct evidence of retaliation, the burden-shifting analysis established in *McDonnell Douglas* also applies to retaliation claims. *Kendrick v. Penske Transp. Services, Inc.*, 220 F.3d 1220, 1229-30 (10th Cir. 2000).  To establish a prima facie claim of retaliation, a plaintiff is required to prove that (1) he engaged in protected activity, (2) a reasonable employee would have found the challenged action materially adverse, and (3) there is a causal connection between the protected activity and the adverse employment action. *McGowan v. City of Eufala*, 472 F.3d 736, 741 (10th Cir. 2006) (citation omitted).  A materially adverse act is one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks and citation omitted).  To establish a causal connection, a plaintiff must prove that the adverse employment actions would not have occurred "but for" his protected activity. *Vialpando v. Johanns*, 619 F. Supp. 2d 1107, 1118 (D. Colo. 2008).  When a defendant asserts non-discriminatory reasons for its actions, a plaintiff must also establish that the defendant's reasons are a pretext. *Stover v. Martinez*, 382 F.3d 1064, 1070-71 (10th Cir. 2004).

1.     Exhaustion of Administrative Remedies

Exhaustion of administrative remedies is a jurisdictional prerequisite for a federal

employee asserting an employment discrimination claim. *Jones v. Runyon*, 91 F.3d 1398, 1399 (10th Cir. 1996). *See also Jones v. United Parcel Service, Inc.*, 502 F.3d 1176, 1183 (10th Cir. 2007) ("In the Tenth Circuit, exhaustion of administrative remedies is a jurisdictional prerequisite to suit.") (citation omitted). To meet this jurisdictional requirement, a plaintiff's claim must have been stated in an EEO complaint and resolved at the administrative level of the case. *Montes v. Vail Clinic, Inc.*, 497 F.3d 1160, 1166 (10th Cir. 2007). Mr. Smith has the burden of proving that he exhausted administrative remedies on his claims. *McBride v. Citgo Petroleum Corp.*, 281 F.3d 1099, 1105 (10th Cir. 2002).

In determining whether a plaintiff has exhausted his administrative remedies, the court must "determine the scope of the allegations raised in the EEOC charge because [a] plaintiff's claim in federal court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC." *Jones*, 502 F.3d at 1186 (internal quotation marks and citation omitted). A Title VII plaintiff must exhaust his or her administrative remedies for each individual discriminatory or retaliatory act. *Martinez v. Potter*, 347 F.3d 1208, 1211 (10th Cir. 2003). In *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002), the Supreme Court clarified that "[e]ach incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice." *Martinez*, 347 F.3d at 1210 (citing *Morgan*, 536 U.S. at 114) (internal quotation marks omitted). "Each discrete incident of [discriminatory] treatment constitutes its own unlawful employment practice for which administrative remedies must be exhausted." *Martinez*, 347 F.3d at 1210. Charges filed with the EEOC are liberally construed in determining whether administrative remedies have been exhausted as to a particular claim. *Jones*, 502 F.3d at 1186 (citations omitted). Nevertheless, the "inquiry is limited to the scope of the administrative investigation that can reasonably be expected to follow from the

discriminatory *acts* alleged in the administrative charge." *Jones*, 502 F.3d at 1186 (emphasis in original).   "In other words, the charge must contain facts concerning the discriminatory and retaliatory actions underlying each claim; . . ." *Id.*

The evidence demonstrates and Mr. Smith does not dispute that he made no mention of retaliation in his EEOC Charge of Discrimination and did not check the "Retaliation" box.   (*See* Doc. # 1 at 6-7 of 50).   "The failure to mark a particular box creates a presumption that the charging party is not asserting claims represented by that box." *Jones*, 502 F.3d at 1186 (citation omitted).   *See also Gunnell v. Utah Valley State College*, 152 F.3d 1253, 1260 (10th Cir.1998) (failure to check the retaliation box creates a presumption that plaintiff did not assert a retaliation claim).   "The presumption may be rebutted, however, if the text of the charge clearly sets forth the basis of the claim." *Id.*   There is no mention of retaliation in the narrative that Mr. Smith submitted to the EEOC.  (*See* Doc. # 1 at 5-35 of 50).   It is only those discrimination claims stated in the initial EEOC charge, and those reasonably related to those claims, that define the scope of any subsequent lawsuit.  *See Jones*, 502 F.3d at 1186. There is nothing in Mr. Smith's EEOC charge that would have put UPS on notice that he was alleging retaliation for any protected opposition to discrimination.  *See Deravin v. Kerik*, 335 F.3d 195, 200–01 (2d Cir. 2003) (claim is considered "reasonably related" when "the conduct complained of would fall within the scope of the [administrative] investigation which can reasonably be expected to grow out of the charge that was made.") (internal quotation marks omitted);  *Chanda v. Engelhard/ICC*, 234 F.3d 1219, 1224-25 (11th Cir. 2000) (plaintiff failed to meet initial jurisdictional requirement for retaliation claim by not including it in EEOC charge, as reasonable investigation of EEOC charge alleging national origin discrimination would not encompass retaliation).

A retaliation claim is not reasonably related to the claims raised in Mr. Smith's EEOC

charge, nor does he demonstrate that a reasonable investigation of his race and gender claims would have uncovered allegations of retaliation.  *Whittaker v. Wendy's Intern., Inc.*, No. 06-cv-02573-MEH-CBS, 2007 WL 1216985, at * 2 (D. Colo. Apr. 24, 2007) (citation omitted).  To the extent that Mr. Smith is alleging a claim for retaliation, it is properly dismissed for lack of subject matter jurisdiction based on failure to exhaust administrative remedies, a jurisdictional prerequisite to suit.

D.      Disparate Impact and Pattern or Practice under Title VII

In his Response, Mr. Smith briefly mentions "disparate impact" and "pattern or practice discrimination" under Title VII.  (*See* Doc. # 107 at 2-3 of 11).  Individual plaintiffs such as Mr. Smith "cannot bring pattern-or-practice claims – only the U.S. Attorney General or a certified class can do so."  *Daniels v. United Parcel Service, Inc.*, 701 F.3d 620, 632-33 (10th Cir. 2012) (citations omitted).

Disparate impact is viewed as an alternate theory of relief under Title VII.  *Hawkins v. Bounds*, 752 F.2d 500, 503 (10th Cir. 1985).  A disparate impact theory of recovery involves "facially neutral policies and procedures that, when applied, have an unintentional discriminatory effect on certain individuals based on their race, color, or national origin."  *Bryant v. Independent School Dist. No. I–38 of Garvin County, Oklahoma*, 334 F.3d 928, 932 (10th Cir. 2003).  "An unlawful employment practice based on disparate impact is established . . . only if . . . a complaining party demonstrates that a respondent uses a particular employment practice that causes a disparate impact" on a protected group.  42 U.S.C. § 2000e–2(k)(1)(A)(i).  "The first step in raising a disparate-impact claim is to identify the specific employment practice allegedly causing the discriminatory impact."  *Carpenter v. Boeing Co.*, 456 F.3d 1183, 1193 (10th Cir. 2006) (citation omitted).

Unlike disparate treatment, the disparate impact theory does not require proof of discriminatory motive or intent. *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 336 n. 15 (1977).  "Statistical evidence is an acceptable, and common, means of proving disparate impact." *Carpenter*, 456 F.3d at 1196 (citations omitted).  Once plaintiffs establish a prima facie case of disparate impact, the burden shifts to the employer to produce evidence of the "business justification" for the challenged employment practice. *Ortega v. Safeway Stores, Inc.*, 943 F.2d 1230, 1243-44 (10th Cir. 1991).  The burden of persuasion, however, remains with the plaintiffs. *Id.*  The plaintiffs "may still prevail if they can persuade the factfinder that other tests or selection devices, without a similarly undesirable racial effect, would also serve the employer's legitimate [hiring] interest[s]." *Id.* at 1244.

Mr. Smith did not plead a disparate impact claim, did not raise a disparate impact claim in his EEOC Charge of Discrimination, identifies no employment practice allegedly causing a discriminatory impact, and presents no evidence of a significant disparate impact on the basis of race or gender.  To the extent that Mr. Smith's is attempting to allege a pattern or practice or a disparate impact claim, UPS is entitled to summary judgment.

V.    Conclusion

Even if Mr. Smith has presented a *prima facie* case of race or gender discrimination, UPS has articulated legitimate, nondiscriminatory reasons for the low Initial Assessment scores he received at the first step of the promotion process in Spring 2011.  Mr. Smith fails to carry his burden of establishing that UPS's articulated reasons were a pretext for discrimination based on his race or gender.  The evidence proffered by Mr. Smith is not sufficient, even if believed by the ultimate factfinder, to sustain his claims of discriminatory termination based on his race or gender.  *See Jones*, 349 F.3d at 1265-66 (internal quotation marks and citation omitted).  Mr.

Smith's retaliation claim is properly dismissed for lack of subject matter jurisdiction based on failure to exhaust administrative remedies.  Mr. Smith cannot bring a pattern-or-practice claim, and he fails to present sufficient evidence to support a disparate impact claim.[2]

Accordingly, IT IS RECOMMENDED that:

1.      Defendant's Motion for Summary Judgment and Supporting Brief (filed April 1, 20130 (Doc. # 103) be GRANTED and summary judgment enter in favor of Defendant and against Plaintiff on all claims in the Complaint.

2.      Plaintiff's Motion for Summary Judgment and Supporting Brief (filed April 17, 2013) (Doc. # 108) be DENIED.

3.      The Clerk of the Court enter a judgment including an award of costs, in the amount submitted by UPS in a bill of costs, that includes any unpaid balance remaining on the amount of $2,893.50 in reasonable expenses previously awarded by the court pursuant to Fed. R. Civ. P. 37(a).  (*See* Docs. # 153 (Courtroom Minutes/Minute Order), # 119 (Courtroom Minutes/Minute Order re: Doc. # 106 (Bill of Costs)).

---

[2]      The court does not at this time reach UPS's additional argument based on the after-acquired evidence doctrine.  (*See* Doc. # 103 at 19-20 of 22).  "The after-acquired evidence doctrine shields an employer from liability or limits relief where, after a termination, the employer learns for the first time about an employee's wrongdoing that would have caused the employer to discharge the employee." *Armani v. Maxim Healthcare Serv., Inc.*, 53 F. Supp. 2d 1120, 1127 (D. Colo. 1999) (citing *Crawford Rehabilitation Serv., Inc. v. Weissman*, 938 P.2d 540, 546 (Colo. 1997) (The after-acquired evidence doctrine shields an employer from liability or limits relief where, after a termination, the employer learns for the first time about an employee's wrongdoing that would have caused the employer to discharge the employee.)).  In cases involving employment discrimination, courts have acknowledged that the after-acquired evidence doctrine does not bar a plaintiff's claim, but rather limits damages.  *See id.* at 1128 (citing *McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352, 362 (1995).

**Advisement to the Parties**

Within ten days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Property*, 73 F.3d at 1059-60 (a party's objections to the Magistrate Judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the District Court or for appellate review); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not

apply when the interests of justice require review).

Dated at Denver, Colorado this 28th day of October 2013.

BY THE COURT:


_s/Craig B. Shaffer_____
United States Magistrate Judge